## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BPG on Orange LLC**<br><br>        Plaintiff<br><br>    v.<br><br>**Douglas Geraldo Azevedo Bernardo,**<br>**Odelyton Nincao Silva,**<br>**Boston Dream Group LLC,**<br>**Boston Dream Group Corporation,**<br>**Omega Home Group LLC, and**<br>**D&O Homes LLC**<br><br>        Defendants | **Docket No.: 1:25-cv-12105**<br><br><br>**COMPLAINT**<br><br><br><br>**Jury Trial Demanded** |

Plaintiff BPG on Orange LLC ("BPG"), by and through its counsel, as and for its Complaint against Defendants herein, alleges as follows on personal knowledge as to its own actions and on information and belief as to all other matters:

### SUMMARY OF THE CASE

1.     This action is brought pursuant to the Racketeer Influenced Corrupt Organization Act ("RICO"), 19 U.S.C. § 1961, et seq. arising from RICO Defendant Bernardo's and RICO Defendant Silva's fraud and misrepresentations involving the new construction of a two-family residence (the "structure") on an empty lot at 29 Orange Street in the Rosindale section of Boston, Massachusetts.

2.     The four (4) Defendant corporations and Raquel Fernandes Faria, believed to be Defendant Bernardo's spouse, formed an association-in-fact enterprise through which Defendants Bernardo and Silva operated to effectuate their predicate acts.

3.     Additionally, BPG makes deceptive business practice claims, pursuant to M.G.L. c. 93A § 11, and fraud claims, pursuant to Massachusetts common law, against all Defendants.

1

4.     As set forth in detail below, Defendants Bernardo and Silva conducted racketeering activity through an association-in-fact enterprise and personally engaged in acts of racketeering that violated RICO.

5.     The association-in-fact enterprise possessed three characteristics: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.

6.     Defendants Bernardo and Silva conducted the affairs of the Defendant corporations through a RICO "pattern," i.e., through the commission of at least two instances of fraud and other RICO predicate crimes.

7.     Defendants Bernardo and Silva used the association-in-fact enterprise to affect interstate commerce by engaging in a pattern of predicate acts as identified in the RICO statute to obtain the contract to build the structure by fraudulent means, to falsely represent that they were licensed and qualified to build the structure, to falsely represent that they had previously constructed new residences in Massachusetts from the ground up, to falsely represent they were familiar with the Massachusetts Building Code and with the laws and regulations of the City of Boston pertaining to the new construction of a two-family residential structure, to fraudulently generate an invoice for construction materials and services, to create false accountings of materials and labor, to refuse to provide documentation to substantiate their invoice for materials and labor, to violate the Massachusetts Building Code, to change the corporate structure of a Massachusetts corporation to a Massachusetts limited liability corporation when it was apparent that BPG would have legitimate claims against Defendants Bernardo and Silva, to form a new foreign limited liability corporation in Wyoming where the managers and/or owners of a limited liability corporation are secret and anonymous, to nullify BPG's contract with Defendant Silva's Massachusetts limited liability corporation, Omega Home Group LLC, and claim that BPG actually had a contract with the Wyoming limited liability corporation even though the Wyoming limited liability corporation was formed twenty

(20) days after BPG entered into the contract with Omega Home Group LLC, to thwart BPG from its legal remedies, and to circumvent laws and regulations in place aimed at protecting the public at large.

8.     BPG was injured by the Defendants' RICO violations to the tune of well over $300,000, and is entitled to receive treble its actual losses, in an amount to be proven at trial, plus attorneys' fees and costs. The Defendants have also damaged BPG by violating M.G.L. c. 93A, which proscribes unfair methods of competition and unfair business practices, and by making fraudulent misrepresentations in violation of Massachusetts common law. BPG is entitled to all appropriate and available relief under the RICO statute, M.G.L. c. 93A, and Massachusetts common law.

9.     This case thus presents the very situation the RICO statute (19 U.S.C. § 1961, et seq.) was adopted to address: a criminal enterprise "competing" unfairly with legitimate businesses through a pattern of racketeering.

10.     Between May 2023 and May 2025, the RICO Defendants Bernardo and Silva, two individuals who had never constructed a new residence from the ground up, who lacked appropriate licenses, who lacked construction experience, who could not read, understand and follow construction blueprints and specifications, and who did not understand or follow the Massachusetts Building Code, invoked a Massachusetts corporation, two (2) Massachusetts limited liability corporations, a Wyoming limited liability corporation -a total of four (4) corporate entities - and a spouse to effectuate their predicate acts and fraud.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under RICO, a federal statute. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over state statutory and common law claims as they arise out of the same case or controversy.

12. Defendants are subject to personal jurisdiction in the District of Massachusetts as they reside in, have transacted and continue to transact business in, and have had more than minimum contacts with Massachusetts in connection with the acts and transactions alleged herein.

13. Venue is appropriate in the District of Massachusetts pursuant to 28 USC § 1391(b), because the events giving rise to these claims occurred in this District.

## **THE PARTIES**

14. BPG is a duly organized Limited Liability Company formed under the Laws of the Commonwealth of Massachusetts on February 17, 2023 with its principal place of business in Dedham, Massachusetts.

15. Douglas Geraldo Azevedo Bernardo is a RICO defendant "person", associated with an enterprise, which he operated or managed through a pattern of racketeering activity and caused injury to BPG's business and/or property by reason of the pattern of racketeering activity.

16. Odelyton Nincao Silva is a RICO Defendant "person", associated with an enterprise, which he operated or managed through a pattern of racketeering activity and caused injury to BPG's business and/or property by reason of the pattern of racketeering activity.

17. Boston Dream Group Corporation was a duly organized corporation formed under the laws of the Commonwealth of Massachusetts on October 5, 2021 with its principal place of business at 21 Blacksmith Way Saugus, Massachusetts. The Officers and Directors of Boston Dream Group Corporation were: Raquel Fernandes Faria, President, Defendant Douglas Geraldo Azevedo Bernardo, Treasurer, Raquel Fernandes Faria, Secretary, Defendant Douglas Geraldo Azevedo Bernardo, Vice President, and Jose Costa Junior, Director. On December 23, 2024, a filing with the Massachusetts Secretary of State stated, "[t]he Board of Directors of Boston Dream Group Corp has determined it is in the best interests of the corporation and its shareholder to convert the corporation into a Limited Liability Company (LLC) under the laws of the Commonwealth of

Massachusetts." The filing with the Massachusetts Secretary of State also stated, "[t]he shareholders of BOSTON DREAM GROUP CORP hereby approve the Plan of Entity Conversion, authorizing the conversion of BOSTON DREAM GROUP CORP into BOSTON DREAM GROUP LLC under the laws of the Commonwealth of Massachusetts, with the terms and conditions set forth in the Plan of Entity Conversion." On January 15, 2025, Boston Dream Group Corp converted to Boston Dream Group LLC. Boston Dream Group Corp was a member of an association-in-fact enterprise which possesses: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.

18.     Boston Dream Group LLC is a domestic limited liability corporation converted from Boston Dream Group Corp on January 15, 2025. Defendant Bernardo is the sole manager of Boston Dream Group LLC. Boston Dream Group LLC is a member of an association-in-fact enterprise which possesses: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.

19.     Omega Home Group LLC, is a domestic limited liability corporation, formed under the laws of the Commonwealth of Massachusetts on August 18, 2021, with a principal place of business at 135 Mill Street, Abington, Massachusetts. Defendant Silva is the sole manager of Omega Home Group LLC. Omega Home Group LLC is a member of an association-in-fact enterprise which possesses: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.

20.     D&O Homes LLC is a limited liability corporation duly formed under the laws of the State of Wyoming on August 24, 2023, with a principal place of business at 1309 Coffeen Avenue STE 1200, Sheridan, Wyoming. Wyoming law allows third-party registered agents to act on behalf of limited liability corporations, maintaining the owner's

anonymity. By using a nominee manager, the true owner remains behind the scenes, while the nominee's name appears in official records. Wyoming does not require listing the member(s) or manager(s) of limited liability corporations on State records when forming anonymous limited liability corporations. D&O Homes LLC is a member of an association-in-fact enterprise which possesses: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.

## THE RICO ENTERPRISE

21.     Boston Dream Group LLC, Boston Dream Group Corporation, Omega Home Group LLC, D&O Homes LLC, and Raquel Fernandes Faria, Defendant Bernardo's spouse, comprised an association-in-fact RICO enterprise through which Defendants Bernardo and Silva conducted their pattern of racketeering.

## FACTS COMMON TO ALL CAUSES OF ACTION

22.     29 Orange Street in the Rosindale section of Boston, an undeveloped lot of land, was owned by one Antonetta Pagliarulo who conveyed the parcel to Lucia Festa on January 12, 1959. The parcel was never developed or built upon. Instead, the parcel was used as a large garden. Lucia Festa passed away and, on January 3, 2006, the parcel was conveyed by the Administrator of Lucia Festa's Estate to Linda A. Lembo and Patricia Glynn.

23.     The parcel remained undeveloped until Linda A. Lembo and Patricia Glynn and their families (collectively "the owner/investors") decided to develop the parcel.

24.     On or about July 12, 2021, the owner/investors made an initial payment to retain Ivan Hernandez, a design professional, to draw up detailed construction plans and specifications, in accordance with the Massachusetts Building Code and applicable City of Boston ordinances, rules and regulations, for the building of a two-family residential structure on the 29 Orange Street lot. Supporting professional services were also contracted with to supplement the design work including civil engineering (Solli Engineering) and surveying (Field Resources).

25.     On September 7, 2022, Ivan Hernandez submitted Permit Application # ERT1388117 to obtain a City of Boston building permit.

26.     On September 28, 2022, a Zoning Code Refusal Letter was issued by Vernon Lee Jr. of the City of Boston Inspectional Services Division ("ISD"). A Zoning Code Refusal Letter is a letter issued by ISD when a project does not meet the zoning requirements. The Letter identifies which provisions of the Zoning Code the project has not met. The Letter is a prerequisite to filing an appeal to the ZBA for zoning relief. The Letter cited two violations that required Zoning Board approval.

27.     On October 18, 2022, Ivan Hernandez submitted Zoning Appeal #BOA1405027. This triggered several mandatory tasks including working with the City of Boston Office of Neighborhood Services (ONS) to hold a neighborhood comment meeting, outreach to neighborhood groups, etc.

28.     On November 6, 2022, available property owners and/or residents in the required 300 feet radius of 29 Orange Street were provided ONS prepared flyers. These fliers were delivered to approximately 70 households. Photographs of the flyers taped to the front doors were taken as proof of delivery. Four non-local owners were notified at their residences or offices the following day, in compliance with the City of Boston's minimal notification period policy.

29.     Upon notification of the flyer delivery and ONS verification of the proof of delivery photos, Boston ISD then scheduled a Zoning hearing for January 31, 2023.

30.     During the January 31, 2023 meeting, the zoning relief was verbally approved with a proviso that initiated a Boston Planning & Development Agency ("BPDA") design review.

31.     On February 17, 2023, BPG was formed. Michael Thomas Lembo ("Lembo") and Michael Glynn ("Glynn"), the husbands of Linda A. Lembo and Patricia Glynn respectively, were named as Managers of BPG. The general character of BPG's business was described as "[d]evelopment of a single residential housing lot in Roslindale section

7

of Boston including the construction of a two-family home. Post construction activities will include creating two condominiums, transferring ownership to the current co-owners of the parcel and continued management of the property's common areas."

32. On March 28, 2023, the decision related to BOA1405027 was documented and signed by the Zoning Board of Appeals.

33. During February through June of 2023, email conversations with BPDA took place to gather and incorporate any required design changes. Several required changes were received, and the building plans and specifications were updated accordingly. BPDA required changes included exterior siding type, roofing materials in particular areas, window materials, etc.

34. The final twenty-six points list of BPDA requirements was issued on August 10, 2023.

35. Permit ERT1388117/BOA1405027 was submitted by the designer, Ivan Hernandez, and approved by the Boston Zoning Board of Appeals on March 28, 2023. The permit process with Boston ISD went through the final approval and Zoning Board reviews from March through early August 2023. BPDA provisos attached on August 10, 2023.

36. Once the construction plans and specifications were completed and the building permit was in sight, BPG began a search for a qualified, licensed, Massachusetts builder and/or general contractor to build the two-family structure.

37. On or about May 1, 2023, while out on a walk, Lembo noticed a residence undergoing renovations at 79 Bonham Road, Dedham, Massachusetts, a location close to the Lembo residence. Close by, Lembo saw a vehicle with "Boston Dream Group" signage.

38. Unbeknownst to Lembo, Boston Dream Group did not have any license or registration to build or renovate in Massachusetts. 79 Bonham Road was a home renovation that is regulated by M.G.L. c. 142A. On May 1, 2023, according to an Affidavit by Defendant Bernardo, filed by Boston Dream Group in Norfolk County Superior Court Civil Action No: 2482CV00690:

> On May 1, 2023 Boston Dream entered into a
> Development Agreement with [owner] for the renovation
> and expansion of 79 Bonham Road . . .

39.  The Development Agreement stated:

> [Boston Dream Group Corp] shall oversee the
> development and construction of the Project, and shall
> perform the services, supervise the provision for services
> and carry out the responsibilities with respect to the Project
> in a good and workmanlike manner; in a timely manner
> and using commercially reasonable efforts at all times.
>
> ********
>
> Developer shall perform the following:
>
> ********
>
> iii.   Establish and implement appropriate administrative
>        and financial controls for construction of the
>        Project, including but not limited to:
>
> ********
>
> • applying for and maintaining in full force and effect any
>   and all governmental permits and approvals required
>   for the lawful construction of the Project
>
> ********
>
> Section 12. Home Improvement Contractor
>
> Developer is registered with the Commonwealth of
> Massachusetts as a Home Improvement Contractor under
> the Registration Number 208846.

40.  The "Development Agreement" appears to be dated May 1, 2023 but the "Home

Improvement Contractor under the Registration Number 208846" was not issued until

months later. Clearly, the "Development Agreement", as written, was drafted and signed

after the Registration Number was issued on June 7, 2023 and not on May 1, 2023.

41.  Massachusetts requires contractors who perform home renovation to have a Construction

Supervisor License and a Home Improvement Contractor Registration pursuant to

M.G.L. c. 142A. Defendants Bernardo and Boston Dream Group Corp had neither on

May 1, 2023. Yet, Defendant Bernardo was driving around in a vehicle which was a

moving advertisement for home construction and/or home improvement services.

42.    M.G.L. c. 142A § 17 states:

> Section 17. The following acts are prohibited by
> contractors or subcontractors:
>
> (1) operating without a certificate of registration issued by
> the director;
>
> ********
>
> (8) publishing, directly or indirectly, any advertisement
> relating to home construction or home improvements which
> does not contain the contractor's or subcontractor's
> certificate of registration number or which does contain an
> assertion, representation or statement of fact which is
> false, deceptive, or misleading;
>
> (9) advertising in any manner that a registrant is registered
> under this chapter unless the advertisement includes an
> accurate reference to the contractor's or subcontractor's
> certificate of registration;
>
> ********
>
> Violations of this section shall subject the violator to the
> administrative sanctions of section eighteen and to criminal
> prosecution as prescribed in section nineteen.
>
> Violations of any of the provisions of this chapter shall
> constitute an unfair or deceptive act under the provisions
> of chapter ninety-three A.

43.    Therefore, a violation of Chapter 142A is an *automatic* unfair or deceptive act or practice

under the Massachusetts consumer protection statute, M.G.L. c. 93A.

44.    Although Defendant Bernardo's Affidavit was "SIGNED UNDER THE PAINS AND

PENALTIES OF PERJURY", there are multiple reasons why this Affidavit is fraudulent:

a.    Boston Dream Group Corp was not registered as a licensed Home Improvement

Contractor until June 7, 2023 and Defendant Bernardo was not licensed as a

construction supervisor until June 20, 2024. Defendant Bernardo's Affidavit is an

admission that he was engaging in the home renovation business, in violation of

10

M.G.L. c. 142 § 17(1), before he had a license. The advertisement on his vehicle shows he was advertising as a builder or home improvement contractor on May 1, 2023, a clear violation of M.G.L. c. 142 § 17(8).



b.  On May 1, 2023, construction at 79 Bonham Road was already underway, apparently without the required building permits. According to the Town of Dedham Building Department, on August 4, 2023, Building Permit BLD-23-554 was issued to Defendant Omega Home Group, as "Primary Contractor", naming Defendant Silva (CS License # 114499, HIC # 203929) who provided the "Description of Proposed Work" as "Interior renovations per plan but NOT addition". On September 20, 2023, Defendant Silva applied for a second building permit for the 79 Bonham Road project. On October 11, 2023, Building Permit BLD-23-719 was issued to Defendant Omega Home Group, as "Primary Contractor", naming Defendant Silva (SC License # 114499, HIC # 203929) who provided the "Description of Proposed Work" as "Build a new 13'x11' addition on the front of the house."

c.  Defendant Bernardo's signature on the Affidavit appears to be a signature used by Raquel Fernandes Faria on filings with the Massachusetts Secretary of State:



45.  Defendant Bernardo continued the same illegal and fraudulent racketeering conduct that he engaged in with the 79 Bonham Road project with the 29 Orange Street project.

46.  On May 2, 2023, Lembo, using the information on Defendant Bernardo's truck, contacted Boston Dream Group by email to ask if they may have interest in the 29 Orange Street project. Later that day, Defendant Bernardo replied via email that Boston Dream Group would be interested and a meeting was arranged. Defendant Bernardo's email signature included his title as "Founder | Boston Dream Group".

47.  On or about May 10, 2023, Lembo met Defendant Bernardo at 29 Orange Street. Lembo told Defendant Bernardo about BPG's plans for 29 Orange Street. Defendant Bernardo represented that he was an experienced Massachusetts licensed builder who had the authority and experience to build the structure on 29 Orange Street. However, this was a flagrant misrepresentation. At this time, Defendants Boston Dream Group Corp and Bernardo held *no* Massachusetts licenses and had *no* prior experience building new construction residences, from the ground up, in the City of Boston. In Massachusetts, a

construction supervisor license is required to build new, one- or two-family structures. Defendant Bernardo did not have a construction supervisor license at this time.

48.    In the same discussion, Lembo asked Defendant Bernardo about his experience working within the City of Boston, as the multiple and varied City of Boston Rules and Regulations were a specific, key concern of BPG. Defendant Bernardo replied that Boston Dream Group routinely worked on homes in the City of Boston and had experience with the City of Boston's ISD.

49.    On or about May 4, 2023, Lembo and Defendant Bernardo shared multiple emails discussing the 29 Orange Street project. Key documents provided included a subset of 29 Orange Street drawings and a background document that had been shared with all potential contractors. Defendant Bernardo used a Boston Dream Group email address with a signature block noting he was the Boston Dream Group Corp "Founder".

50.    Boston Dream Group Corp was organized as a domestic corporation on October 4, 2021. The officers and directors of the corporation were as follows:

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| PRESIDENT | RAQUEL FERNANDES FARIA | 21 BLACKSMITH WAY<br>SAUGUS, MA 01906 USA |
| TREASURER | DOUGLAS GERALDO AZEVEDO BERNARDO | 21 BLACKSMITH WAY<br>SAUGUS, MA 01906 USA |
| SECRETARY | RAQUEL FERNANDES FARIA | 21 BLACKSMITH WAY<br>SAUGUS, MA 01906 USA |
| VICE PRESIDENT | DOUGLAS GERALDO AZEVEDO BERNARDO | 21 BLACKSMITH WAY<br>SAUGUS, MA 01906 USA |
| DIRECTOR | ALEXANDER MEINES SILVA | 21 BLACKSMITH WAY<br>SAUGUS, MA 01906 USA |
| DIRECTOR | JOSE FARIA COSTA JR | 21 BLACKSMITH WAY<br>SAUGUS, MA 01906 USA |

On or about July 21, 2023, Director Alexander Meines Silva resigned. Raquel Fernandes Faria, as President, accepted this resignation and wrote, "We will provide you with all the necessary documentation and information regarding your final paycheck, benefits, and any other relevant matters."

51.    Clearly, Defendant Boston Dream Group Corp or Defendant Bernardo, lacking a proper license, could not enter into a contract to build a two-family residence in Massachusetts.

13

Defendant Bernardo did exactly what he did for the 79 Bonham Road project – he brought in Defendant Silva and Defendant Omega Home Group LLC. On or about May 24, 2023, Defendants Silva, operating through Defendant Omega Home Group LLC, provided an initial Estimate, via an electronic quote management system, for the construction of the structure on 29 Orange Street. This electronic quote management system sent an electronic system generated notification that a document was ready for review on an account on the estimaterocket.com portal. The cover note was signed "Delton Silva and Omega Home Group LLC" over Defendant Bernardo's signature line "Douglas Bernardo | Founder | Boston Dream Group"

52.    Emails related to the initial estimate submission carried on through that email thread on May 11, 2023, May 31, 2023, June 1, 2023, and June 6, 2023. The emails provided additional details and/or iterations of the design specifications and drawings.

53.    On June 7, 2023, Defendant Boston Dream Group Corp registered as a Massachusetts Home Improvement Contractor ("HIC"):



Defendant Bernardo, the "founder" of Boston Dream Group, is not identified in the HIC registration. Up to this time, upon information and belief, Defendant Bernardo did not have any Massachusetts license that allowed him to build two family residential homes,

from the ground up, in Massachusetts. However, the HIC registration still did ***not*** allow Defendant Bernardo to contract as a builder of new construction two-family residences.

54. Defendant Silva, operating through Defendant Omega Home Group LLC, provided at least seven (7) iterations of the Estimate as issues, concerns, and refinement of the design and specifications for the structure were resolved. Dates of emails and document releases included May 24, 2023, June 17, 2023, June 28, 2023, July 11, 2023 July 22, 2023, July 27, 2023, and August 1, 2023. All iterations of the Estimate document noted "New Build"

55. On June 13, 2023, a new email thread was used to discuss the refinements to the Estimate including BPDA influenced changes. This new email thread had responses on June 13, 14, 17, 20, 24, 26, 27, and 28, 2023. Most of the exchanges were between Lembo and Defendant Silva, though one response was from Defendant Bernardo.

56. On or about June 28, 2023, BPG asked Defendants Bernardo and Silva for references, and specifically asked for references to "new construction", that is, residences that they built from the ground up. Defendants Bernardo and Silva, through text and email, provided a YouTube video and two (2) web sites. Defendants Bernardo and Silva represented that the video (143 Myrtle Street, Rockland, Massachusetts) and one website (7 Moduc Street, Duxbury Massachusetts) were examples of newly constructed homes they had built from the ground up and the second website (84 Oldham Street, Pembroke, Massachusetts) was an example of a home that they had renovated.

57. The video clearly identified a home with the address "143 Myrtle St Rockland MA" and clearly stated "New Construction". This video is a false misrepresentation. The home at 143 Myrtle Street in Rockland, MA was built in 1800. According to the Plymouth County Registry of Deeds (Book 55967, Page 345), on November 4, 2021, this property and the existing structure was conveyed to "Douglas Geraldo Azevedo Bernardo, Jose De Faria Costa, Jr. and Alexander M. Silva". The 143 Myrtle Street structure is the residence of Defendant Bernardo and his spouse Raquel Fernandes Faria, who in the video represents herself as the "Vice President of Boston Dream Group". This is a misrepresentation in

that Raquel Fernandes Faria is the President of Boston Dream Group. In addition, Raquel

Fernandes Faria failed to disclose that she is married to Defendant Bernardo. The

structure as it existed prior to November 4, 2021 is depicted below on the left. The

structure as shown in the video is depicted below on the right:

 

58.    In February 2022, according to Rockland, Massachusetts Building Department records, a

building permit was issued to Defendant Silva, construction supervisor license CS-

114499, to renovate the interior and exterior of 143 Myrtle Street. Clearly, the 143 Myrtle

Street project was ***not*** the construction of a new home from the ground up.

59.    One web site featured a newly constructed home on 7 Modoc Street, Duxbury,

Massachusetts. On August 22, 2022, according to the Town of Duxbury Building

Department records, Building Permit BPO-22-110 was issued for construction of a "new

4 bedroom, 3 1/2 bath dwelling" at 7 Moduc Street, Duxbury, Massachusetts. The permit

was issued to Freeman Boynton III, of Duxbury Construction, a firm that has constructed

homes in Duxbury for over 45 years.

60.    Upon information and belief, Defendant Silva's only connection to 7 Moduc Street was

as a ***painter***. Defendant Silva is associated with Omega Painting & Home Improvement

LLC, a domestic limited liability corporation formed in 2014. The general character of

Omega Painting & Home Improvement LLC is identified as "PAINTING SERVICES AS

WELL AS PROPERTY MANAGEMENT SERVICES". At the time, Defendant Silva was identified as the resident agent and "Francyslene Lopes Miranda Nincao" was identified as the sole manager. On August 19, 2021, Defendant Silva became the sole manager. On February 22, 2024, Defendant Silva became the resident agent and "Marlon Miranda" became a manager. On March 28, 2024, a "Restated Certificate of Organization" filed with the Massachusetts Secretary of State did not include Defendant Silva's name.

61. Clearly, the representations that Defendants Bernardo and Silva had built the homes at 7 Moduc Street and 143 Myrtle Street from the ground up were false.

62. The second website provided by Defendants Bernardo and Silva featured a renovated home at 84 Oldham Street, Pembroke, Massachusetts. According to the Pembroke Building Department, a permit was issued to Defendant Silva to remodel the basement, convert a garage to a master bedroom, and to remodel the kitchen and bathroom. Again, there is no evidence that Defendants Bernardo and Silva had ever built a one- or two-family residence from the ground up in Boston or anywhere else in Massachusetts.

63. On or about July 12, 2023, a meeting was held at the Lembo residence with Defendants Bernardo and Silva, Lembo and Glynn, the managers of BPG, and the other interested parties. During the meeting the terms and conditions desired by BPG and the interested parties, including payment terms and project management processes, were discussed in detail. At this meeting Defendant Bernardo introduced Defendant Silva as his "business partner".

64. On July 20, 2023, Defendant Silva provided a revised estimate through the electronic quote system. On July 23, 2023, Lembo replied with specific references to design and other supporting documents.

65. On August 1, 2023, Lembo electronically received the proposal draft, identified as "Estimate" (Exhibit 1) but the text in the document still reflected "2023-06-14". This was the first iteration that included "Appendix A" (references to specification documents),

"Appendix B" (Insurance) and "Appendix C" (project management and reporting processes).

66.    Specifically, Pages 15-16/17 of the "Estimate" state key specification, process, monitoring, and administrative documents:

---

*Description*

---

Appendix "A"
Reference specification documents This AGREEMENT is the sole agreement related to this project and incorporates by reference designs and specifications found in the attached AGREEMENT DOCUMENTS
**NOTES**
  • copies provided via email on 7/23/2023 sent to Delton at 9:45PM
  • Architectural drawings:
  • are awaiting final BPDA and ISD signoff, latest version was provided in 7/23 email
  • Final versions to be provided upon approval of permit.
**Architectural drawings:**
  • Plans submitted to City of Boston with permit ERT1388117
  • Developed by Ivan Hernandez
  • Date of revision in signoff: 7/20/2023
**HERS Analysis**
  • Developed by ecoHomes Services
  • Quincy, MA
  • Dated: 5/16/2023
**NFPA 241 Report**
  • Developed by Massachusetts Construction Consultants, Inc.
  • West Roxbury, MA
  • Dated: 6/6/2023
**BWSC approved plans**
  • Created by: Solli Engineering
  • Norwood ,MA
  • Dated: 7/3/2023
**Certified Plot plan**
  • Created by Field Resources, Inc.
  • Needham, MA
  • Dated: 11/14/2022

Appendix "B"
Insurance Policies

Omega Home Group LLC will maintain Worker's Compensation and Liability Insurance for the duration of the project.

BPG on Orange, LLC will be named as additional insured on this certificate.

BPG on Orange, LLC may, at its discretion, purchase a separate liability and/or property protection insurance policy.

Appendix "C"
Book keeping and Project reporting

Book keeping and project management reporting:

Bi-weekly meetings with the project manager and project owner(s) will utilize existing reports available to the project manager to review of costs for materials, labor, permits, services, etc.

Should additional reporting be required the project manager and project owner(s) will discuss and develop a mutually agreeable approach.

Additional cost, if incurred, will be determined and billed at $28/hour for accounting support.

67.     BPG, through Lembo, accepted the "Estimate" electronically on August 4, 2023. Page

17/17 of the Estimate states:

> Electronic Document Acceptance Summary
> Status: Approved
> Signer Name: Mike Lembo
> Accepted Amount: $1,103,977.88
> Date: August 04, 2023
> Time: 08:42AM EDT
> IP Address: 209.6.13.72

68.     On or about August 3, 2023, Boston Planning and Development Agency (BPDA)

completed their review of the project. On August 11, 2023, after numerous phone

discussions, Meghan Richard of BPDA sent an email stating that BPDA had approved the

plans and a set of provisos.

69.     On August 11, 2023, Lembo advised Boston Dream Group Corp that the BPDA approval

was done and Defendant Silva should be able to take over the permit issuance process

with Boston ISD.

70.     On August 11, 2023, Lembo received an email from bostondreamgroup@gmail.com,

with Bernardo's signature line, stating that going forward all correspondence should be

sent to *three* email addresses: bostondreamgrouo@gmail.com,

bdgchiefoperatingofficer@gmail.com and omegahomegroup@gmail.com. The email

further stated, "Delton and I will be running all field operation." At the time Defendant

Bernardo did not have a construction supervisor license, therefore it was illegal for him to

run "field operation".

71.  On or about August 23, 2023, BPG made out a check payable to OMEGA HOME GROUP for $30,825 (check #106) as an initial payment. Defendants Bernardo and Silva represented that all funds paid by BPG would be kept in a separate bank account, all payments to workers, vendors, etc. would be made from this separate account, and regular reports would be generated to follow the cash flows in and out of this separate account.

72.  On August 24, 2023, twenty (20) days after Lembo signed the Estimate and the day after Lembo made payment to Omega Home Group LLC, unbeknownst to BPG, Defendants Bernardo and Silva formed D&O Homes LLC, a limited liability corporation duly formed under the laws of the State of Wyoming, with a principal place of business at 1309 Coffeen Avenue STE 1200, Sheridan, Wyoming. Wyoming law allows third-party registered agents to act on behalf of limited liability corporations, maintaining the owner's anonymity. By using a nominee manager, the true owner remains behind the scenes, while the nominee's name appears in official records. Wyoming law does not require listing the member(s) or manager(s) of limited liability corporations or the purpose of the limited liability corporation on public records.

73.  In a conversation with the American Arbitration Association on or about May 7, 2025, counsel for D&O Homes LLC represented that the "D" in D&O stands for Doug and the "O" stands for Odeylton. However, Defendant Silva's counsel later represented that the "O" did not stand for Odeylton.

74.  On September 5, 2023, Defendant Silva appeared at Boston ISD, paid the permit fee and emailed a copy of the *receipt* to Lembo. However, Defendant Silva did ***not*** email a copy of the actual building permit. In the email, Defendant Silva stated excavation was to start the following Tuesday.

75.  This prompted communication from Lembo to Defendant Silva to discuss the lack of a physical copy of the building permit. Defendant Silva insisted that the "ISD clerk" told him he was "good to go" and he assumed the building permit was approved. Defendant

Silva did not understand that in the City of Boston, paying the permit fee does not automatically issue the permit, paying the permit fee only begins a final approval process.

76. Defendant Silva further stated, "that's the way they work in other towns". This was a flagrant misrepresentation because other towns, including Dedham, require a copy of the building permit to be on the job site. The applications Defendant Silva signed for the 79 Bonham Road project stated, in capital letters "PLEASE NOTE: YOUR APPLICATION NUMBER IS NOT APPROVAL TO PROCEED. WORK SHOULD NOT COMMENCE UNTIL A PERMIT IS ISSUED. YOU WILL RECEIVE NOTIFICATION VIA EMAIL. In addition, the Estimate signed by Lembo specifically stated, "No work to commence until permit is located on premises." The purpose of the permit on site requirement is to have the building permit on site so the inspectors can sign the building permit after each inspection. Any honest, competent builder knows and understands this.

77. The City of Boston invoice number for the permit fee is 972023133834640 for $11,050. The permit number was changed from ERT 1388117 to ERT1515294.

78. On or about September 6, 2023, in a phone conversation Defendants Bernardo and Silva instructed Lembo to make all further payment checks payable to D&O Homes LLC and to send the checks to Defendant Silva's address at 135 Mill Street Abington, MA 02351. (This address is a home deeded to "Odelyton **Da**Silva", *not* Odeylton Silva.) Lembo had never heard of D&O Homes LLC and asked the reason why payments would be made to an entity with whom BPG had no contract. Defendants Bernardo and Silva represented that it was an "accounting thing", a process to keep 29 Orange Street funds separate from other projects.

79.    On September 7, 2023, Defendant Silva sent an email to BPG stating:

> Reminding you to make checks payable to D&O Homes LLC
> 135 Mill St, Abington, MA 02351
> We appreciate your business!
> With many thanks,
> Delton Silva
> Omega Home Group LLC
> 781-204-4281

80.    Appendix "C" of the Estimate (Exhibit 1) electronically signed by Lembo on August 4,

2023 stated,

> "Bi-weekly meetings with the project manager and project
> owner(s) will utilize existing reports available to the project
> manager to review of costs for materials, labor, permits,
> services, etc."

Defendants Bernardo and Silva represented to Lembo that the "reports" would be based

on the transactions in and out of the separate account, that an electronic accounting

system would be used to keep track of all vendor invoices, payroll, bank checks, money

transfers, and reconciled bank statements – in other words- every penny spent on the

29 Orange Street project – and that the electronic accounting system would generate

reports reflecting the cash flows.

81.    After the phone call, Lembo emailed Defendants Bernardo and Silva to confirm that

payments should be made to D&O Homes LLC with whom BPG did not have a contract.

In the same email, Lembo requested a copy of the City of Boston building permit and

copies of Defendant Silva's liability insurance.

82.    Despite BPG's meticulous preconstruction project management and planning and the

retention of a qualified and experienced designer, structural engineer, and other

consultants, once the "Estimate" was signed on August 4, 2023 things began to fall apart.

83.    Over the next few weeks, Defendant Silva was the onsite construction supervisor to

supervise the excavation of the foundation hole and the build out of the forms for the

foundation footings. On or about October 2, 2023, Defendant Silva called Boston ISD to

arrange for an inspection prior to pouring concrete for the footings. He was told that

although the fee was paid, no permit had been issued, and all work was to cease immediately. Defendants Silva and/or Bernardo apparently did not understand that in the City of Boston ISD process, payment of the permit fee starts a final review of all project documents **prior** to the official issuance of a physical permit. No work should be started before the physical permit is received and the permit is posted on the job site. This requirement is clearly stated on the ISD web site. Section 1.10 of the signed "Estimate" clearly states: "***The Contractor shall comply with all laws, ordinances and regulations governing the conduct of work. No work to commence until permit is located on premises.***"

84.     In the time between the start of excavation and the work stoppage, several checks were made payable to D&O Homes and sent to the 135 Mill Street address and/or delivered personally

      a.   Project Phase 1 initiation payment (50% planned costs): $112,523 on 9/12/2023

      b.   Change order #1 for increase in permit cost: $2,550 on 9/12/2023

      c.   50% deposit on windows (a long lead time item): $24,432 on 9/28/2023

85.     By the end of September 2023 there should have already been two (2) meetings to review the "reports" prepared from the separate account. Defendants Bernardo and Silva provided no reports and held no meetings. The money Lembo paid to D&O Homes LLC was not held in a separate account specifically and exclusively for the 29 Orange Street project. Instead, the money Lembo paid to D&O Homes LLC was laundered off to secret bank accounts of a secret corporation.

86.     The penalty for working without a valid, physical permit on site, per Boston ISD policy, was **invalidation** of the permit application and ZBA appeals. The ISD inspector handling the permit, followed this policy, issued a new Zoning Refusal letter, and advised BPG to immediately **restart** the permit process.

87.    On October 3, 2023 Lembo had a discussion with ISD Inspector D'Amato regarding how to get the project back on track. Inspector D'Amato provided details and contacts. Lembo provided a fresh set of files via email to be included with the new permit request.

88.    Later, on October 3, 2023, Inspector D'Amato issued a Zoning Code Refusal for ERT1515294. He advised working with the ZBA scheduling manager to bring the 29 Orange Street project once again before the ZBA.

89.    On October 3, 2023, Hernandez, Defendants Silva and Bernardo, and Lembo held a conference call to assess and assign actions to get the project back on track.

90.    On October 5, 2023, Hernandez resubmitted a request to the Zoning Board and Lembo contacted ZBA scheduling. Lembo was advised to check with ONS to provide approval to schedule the hearing. On or about October 10, 2023, Lembo contacted Stephanie Haynes, ZBA Scheduling Manager (upon her return from vacation) to discuss the process. Lembo also contacted Dianna Bronchuk of ONS to determine if the neighborhood comment process needed to be re-done. Lembo was informed that a ***new*** neighborhood meeting needed to be prepared for and held. Accordingly, a repeat flyer distribution was done on October 22, 2023, ONS led a meeting held on November 8, 2023, and neighbors provided feedback and criticism.

91.    This time at the ONS meeting neighbors were more resistant to the 29 Orange Street project. BPG had to retain a zoning attorney to help BPG through the process. BPG retained Attorney Tim Fraser of Dain & Torpey prior to the ZBA meeting. Attorney Fraser recommended deferring the process to a later date to better prepare for the hearing. Changes were made to the plans based on BPDA input and neighborhood comments. The final hearing date was March 12, 2024 and the ZBA decision was finally published on May 3, 2024. On or about July 15, 2024, Permit ERT1515294/BOA1533227 received final BPDA and ISD signoffs.

92.    Key dates for the new building permit, from the ZBA tracking system were:

| | |
|---|---|
| Address | 29 Orange ST Roslindale 02131 |
| Appeal Type | Zoning |
| Parent App# | ERT1515294 |
| BOA App# | BOA1533227 |
| contact | Ivan Hernandez |
| Date Submitted | 10/5/2023 |
| Date Received | 10/5/2023 |
| Hearing Date | 3/12/2024 |
| Final Decision Date | 5/3/2024 |
| Date Closed | 5/24/2024 |
| Result | Approved |
| Project Description | Building new 2 family duplex home Market rate units Updated zoning review requested on behalf BOA 23 24 |
| Status | Appeal Closed |

93.    On July 11, 2024, Boston Dream Group Corp filed a lawsuit against the owner of

79 Bonham Road, alleging in Paragraphs 13, 14, and 15 of its Complaint:

13. [Homeowner] has indicated she is withholding payment until Boston Dream Group provides a satisfactory accounting of the Project costs.

14. Boston Dream Group has provided [homeowner] all the documentation of costs it has, and to its knowledge, has ever had, regarding the Project costs.

15. [Homeowner] has no right under the Agreement to withhold payment regardless of whether or not Boston Dream Group provides this documentation, which again, it has.

94.    These are exactly the tactics Defendants Bernardo and Silva would employ in dealing

with BPG concerning 29 Orange Street. Defendants Bernardo and Silva submit invoices

but could not and/or would not back up the invoices, penny for penny, with actual vendor

invoices, canceled checks or legitimate money transfers, and bank statements documenting and reconciling that the claimed payments were actually made to the alleged payees. Defendants Bernardo and Silva then instruct their attorneys to threaten and/or take legal action in an attempt to intimidate homeowners. In the case of 79 Bonham Road, Boston Dream Group and its attorney should have known that providing a homeowner with "all the documentation of costs it has, and to its knowledge, has ever had, regarding the Project costs" is not good enough. Homeowners are entitled to an exact accounting and documentation of all project costs that are ***reasonable*** under the circumstances.

95.    On July 18, 2024, Defendant Silva obtained a physical copy of the permit from ISD.

96.    In July 2024 Defendant Bernardo claimed that construction costs, especially lumber costs, had increased during the almost one-year delay. (This was not true because on August 4, 2023, lumber futures were $496 per 1000 board feet and on July 4, 2024 lumber futures were $434 per 1000 board feet – the cost of lumber had actually fallen approximately 12.5%.) Beginning in May 2024, BPG repeatedly asked how the project delay would affect the cost of the project and repeatedly asked for updated pricing.

97.    On July 22, 2024, Lembo requested a meeting to define the next steps in project delivery and to discuss finances. Defendant Bernardo repeated that the financial numbers, agreed to in the Estimate signed on August 4, 2023, would be revised upward. From July 17, 2024 through August 5, 2024, more excavator work was required to repair the foundation hole walls that had eroded and collapsed during the project delay.

98.    On or about July 25, 2024, BPG received a change order for several Phase 1 (Site work and foundation) deliverables. BPG questioned the change orders, and again Defendant Bernardo denied any responsibility for the permit fiasco, the illegal excavation of a foundation hole, the added expenses of the excavator work, the expenses of retaining a lawyer to deal with ONS, the resulting project delay, etc.

99.   On June 20, 2024, Defendant Bernardo obtained construction supervisor license number CS-119960. Now Defendant Bernardo did not need Defendant Silva to continue the project.

100.  On or about July 31, 2024, Defendant Bernardo suddenly mentions to Lembo that Defendant Silva does not want to be involved with the project any further. Lembo repeatedly asks for written documentation from Defendants Silva and Bernardo supporting this claim, but none is provided.

101.  On or about July 28, 2024, Lembo requested a copy of the ISD stamped plans for his records. Defendant Bernardo, via text on July 31, 2024, insisted the City of Boston ISD does not stamp approved plans and records in the system. However, on August 1, 2024, Defendant Boston Dream Group Corp, sent a copy of the City of Boston ISD stamped plans.

102.  Once the project restarted, Defendant Bernardo totally disavowed the "Estimate" (Exhibit 1) between BPG and Omega Home Group LLC that was signed on August 4, 2023. Defendant Bernardo totally disavowed that Defendant Silva was the construction supervisor as stated in the "Estimate" and on the building permit. Despite the representation in the "Estimate" signed on August 4, 2023,

> Omega Home Group LLC ("The contractor" "The company")
> agrees to be solely responsible for the completion of the work
> described regardless of the actions of any third
> party/subcontractor utilized by the contractor

Defendant Silva, now claims that his participation in the 29 Orange Street project was limited to digging the foundation hole and pouring the concrete foundation. Odeylton N Silva d/b/a Omega Home Group LLC holds Construction Supervisor License No. CS-114499. If Defendant Silva walked away from the project after the foundation concrete was poured, his Construction Supervisor License walked away with him.

780 CMR R5.1.2 defines construction supervisor as:

> **Construction Supervisor:** Any individual directly supervising persons engaged in construction . . . involving any activity regulated by any provision of 780 CMR.

780 CMR R5.2.12 requires:

> **On-site presence of Supervisor:** A licensed individual or a licensed designee shall be present on the site at some point to approve construction . . . involving the following work:
> 1. Excavation
> 2. Foundation (pouring or other
> 3. Decking
> 4. Rough Framing
> 5. Finished framing

780 CMR R5.2.16 addresses successor licensed Construction Supervisors:

> Permit Applications: All building permit applications shall contain the name, signature and license number of the construction supervisor who is to supervise those persons engaged in construction . . . as regulated by 780 CMR 108.3.5 and in the event that such licensee is no longer supervising said persons, the work shall immediately cease until a successor license holder is substituted on the records of the building department.

103. Clearly, if a construction supervisor walks away from the new construction of a two-family duplex in Boston, ***construction must cease*** until a successor construction supervisor presents himself to the Inspectional Services Department (ISD) with his Construction Supervisor License, evidence of liability insurance, and ***a letter from the owner agreeing to the appointment of the successor licensed construction supervisor***, to amend the original permit application. After Defendant Silva supposedly walked away on or around July 2024, Defendant Bernardo did not present to the City of Boston ISD to amend the application for the permit and BPG did not provide a letter agreeing to the appointment of Defendant Bernardo as successor construction supervisor.

104. On or about September 6, 2024, Defendant Boston Dream Group Corp submitted "Estimate # 1086", dated July 29, 2024, to Lembo. The work descriptions loosely mirrored the original "Estimate", but the prices were increased and the agreed to terms

and conditions, contained in Appendices A, B, and C of the original "Estimate", were not included in Estimate #1086. Defendant Bernardo had eliminated the agreed to reports and meetings. Estimate # 1086 named Defendant Bernardo as the construction supervisor.



105. Lembo refused to agree to or sign this document on the grounds that the negotiated terms in the Omega Home Group LLC "Estimate", especially Appendices A, B and C, were not carried over into "Estimate # 1086". In addition, Defendant Bernardo did not explain why Defendant Silva suddenly wanted to walk away from the project, why the original "Estimate" had not been between BPG and Boston Dream Group Corp, or that Defendant Bernardo had only recently obtained his construction supervisor license on June 20, 2024. It became perfectly clear that Defendants Bernardo and Silva wanted to disavow the "Estimate" signed on August 4, 2023.

106. The email addresses that had been used in 2023 to communicate were no longer considered active. Lembo could communicate with Defendants Bernardo and Silva only through an email address, ddhomescustomllc@gmail.com, that appeared to be associated

with D&O Homes LLC, an entity that BGP had no contract with. Clearly, Defendants Bernardo and Silva had misrepresented that the involvement of D&O Homes LLC was merely an "accounting thing, a process to keep 29 Orange Street funds separate from other projects". Defendants Bernardo and Silva provided no information as to who owned or managed D&O Homes LLC. Eventually, Lembo discovered that D&O Homes LLC was a secret and anonymous Wyoming corporation. BPG would never contract with or do business with a secret and anonymous Wyoming corporation. On or about September 9, 2024, Lembo replied with his concerns to the D&O Homes LLC email and again requested compliance with the original Estimate's terms, especially, Appendix C's terms concerning financial reports and meetings.

107. On or about August 12, 2024 through September 28, 2024 footing and foundation work was finally completed, but not without major and expensive problems. Defendants Bernardo and Silva failed to obtain the proper permits to close Orange Street and its adjoining sidewalks to accommodate cement trucks and cement pumps. Defendant Bernardo argued that the City of Boston ISD told him no additional permits were needed. That may have been true from the ISD perspective; however, ISD does not issue permits to close streets and sidewalks in the City of Boston. Sidewalk and street closure permits are issued by other branches and agencies of the City of Boston. Defendants Bernardo and Silva had represented that they were knowledgeable about City of Boston rules and regulations concerning home construction. This fiasco resulted in the City of Boston not allowing the cement trucks on Orange Street. Cement trucks, full of wet concrete, that had lined up to deliver their loads had to return to the cement plant without dropping off their loads. Of course, the cement plant demanded to be paid for the unused concrete. As no reports were provided, BPG could not determine if it was charged for this unused concrete. Even now, despite multiple requests by BPG's counsel for detailed documentation of the 29 Orange Street project finances, Defendant Bernardo still refuses to provide any detailed documents.

108.    The foundation was eventually poured but a basement window well, clearly defined and delineated on the foundation plans, was not completed with the pour of the foundation. The foundation hole and its erosion of the almost yearlong construction delay interfered with the lateral support of an abutter's driveway and edge of the driveway was compromised. The erosion had filled in the area of the foundation hole where the basement window well was supposed be located and Defendant Bernardo was reluctant to re-excavate the area for fear that the abutter's driveway would collapse. Instead of seeking a solution from a qualified engineer, Defendant Bernardo tried to shore up the wall of the hole with sheets of plywood and support timbers. He unilaterally decided that the window well would not be poured with the foundation but would be installed at a later date. Defendant Bernardo then claimed that there was no allowance for the basement window well and included a change order with a cost of over $10,000. Clearly, the erosion of the foundation hole walls was the result of Defendant Silva's failure to obtain the building permit before digging the foundation hole, but Defendants Bernardo and Silva expected BPG to assume the expenses of their incompetence.

109.    Between approximately September 1, 2024 and December 1, 2024, framing, roofing, and exterior wall sheathing were installed.

110.    On or about September 30, 2024, Lembo again asked for the agreed to project financial reporting. Again, Defendants Bernardo and Silva failed to provide any accounting of the project funds.

111.    Between October 13, 2024 and October 31, 2024 Lembo sent emails to Defendant Bernardo concerning finances and project management including an email that summarized a discussion between Lembo and Defendant Bernardo on October 24, 2024.

112.    On October 22, 2024, an onsite meeting with Defendant Bernardo was held to review the construction progress, discuss finances, and discuss project management. Patricia Glynn, Ivan Hernandez, Linda and Lembo were in attendance on site and Glynn attended by phone. Defendant Silva was not in attendance. Lembo reiterated the need for regular

meetings and reporting as outlined in the "Estimate" signed on August 4, 2023. Defendant Bernardo became very defensive and stated that reports exist in "accounting software". Defendant Bernardo stated that the "existing agreement" was not with him on site and inferred that there was ***no*** agreement "in place". Lembo and others in attendance maintained that there clearly was an agreement – the "Estimate" (Exhibit 1) - that was negotiated over several weeks and finally signed on August 4, 2023. Lembo specifically asked that Defendants Bernardo and Silva clearly state in writing each other's responsibilities in the project. Although Defendant Bernardo had been acting as construction supervisor since the project restarted in July 2024, but the contract – the "Estimate" between BPG and Omega Home Group LLC - named Defendant Silva as the construction supervisor and the building permit named Defendant Silva as the construction supervisor.

113.    On October 31, 2024, Lembo received a response from the D&O Homes LLC email address. The email was ***unsigned*** but assumed to be from Defendant Bernardo, stating an ultimatum and threat that work will stop unless a new agreement is signed. The email did not address or even acknowledge the concerns of BPG.

114.    On or about November 6, 2024, the Massachusetts Department of Industrial Accidents (DIA), Office of Investigations, issued a stop work order (SWO) to Defendant Boston Dream Group Corp. The identification number of the SWO is 24-46910. As a result, Boston Dream group Corp was immediately placed on DIA's "Disbarment List" and was immediately debarred from bidding or participating in any state or municipal funded contracts for a period of three (3) years from the date of the SWO pursuant to M.G.L. c. 152 § 25C.

115.    On or about November 21 - 25, 2024, Defendant Bernardo presented a new "Estimate # 01" from D&O Homes LLC, dated October 9, 2024, for Lembo's signature. Defendant Bernardo had previously represented that D&O Homes LLC was an "accounting thing, a process to keep 29 Orange Street funds separate from other projects"

but now he represented that D&O Homes LLC was a corporation whose business was building homes. Defendant Bernardo sent this document to Lembo as a series of PNG image files. At the time, Lembo was on vacation. Glynn requested a PDF version of "Estimate # 01" which was received on November 25, 2024. BPG refused to agree to or sign this document for the same reasons it refused to sign Boston Dream Group's "Estimate # 1086".

116.    On or about December 5, 2024, Mr. Lembo received an ***unsigned*** email from the ddhomescustomllc@gmail.com email account stating, "Delton will be sending a letter of dissolution of the contract."

117.    After numerous requests for the agreed to reporting pursuant to Appendix "C" in the August 4, 2023 Omega Home Group LLC Estimate, Lembo received the following response: "The current contract is the only financial report that will be given to you. That's the number of what everything will cost." Just as Defendant Bernardo had done in the 79 Bonham Road project, he refused to provide any documents supporting or justifying the amounts demanded in an invoice.

118.    On December 5, 2024, after returning from vacation, Lembo visited 29 Orange Street and noted that the installations of rough plumbing and electrical had started. The installations of rough plumbing and electrical were scheduled to be done ***after*** the framing inspection was completed. The inspection had not been done. Eventually, most of the installed rough plumbing and electrical had to be removed and re-installed at great expense because the framing which supported the rough plumbing and electrical was substandard. For example, the framing needed to be augmented by sistering approximately 130 additional boards to each of the existing floor joists. Plumbing between the improperly spaced floor joists had to be removed and reinstalled. Lembo then emailed stating that the installations of rough plumbing and electrical was unauthorized and that no work beyond the framing should be done. Lembo clearly communicated, "We do not want any further work on Phases 3 or 4 tasks until contract status is resolved."

119.    On or about December 12, 2024, BPG, unable to come to terms with Boston Dream
        Group Corporation and/or and/or Omega Home Group LLC and/or D&O Homes LLC
        and/or Defendant Silva and/or Defendant Bernardo, Lembo requests an invoice ***and***
        supporting documentation to close out the involvement of Defendant Boston Dream
        Group Corporation and/or Defendant Omega Home Group LLC and/or Defendant
        D&O Homes LLC and/or Defendant Silva and/or Defendant Bernardo in the project. This
        also prompted a review of the integrity of the structure by a structural engineer and the
        designer and a review of the construction methods and quality by an independent licensed
        construction supervisor.

120.    On or about December 12, 2024, Lembo coordinated a walk through at the site with the
        licensed structural engineer, Fergal Brennock to assess the state of the structure. During
        the walk through, the structural engineer noted several glaring and dangerous issues,
        including incorrect spacing of floor joists for the first and second floors (16" on center
        rather than the specified 12" on center) and approximately 20 other dangerous structural
        issues including missing posts, hangers, etc. that threatened the integrity of the structure.
        Numerous photographs were taken to document the multiple, significant construction
        defects. These defects were discussed in detail during the walk through. After the walk
        through, it was clear that the structure did not meet the requirements of the Massachusetts
        Building Code and will not pass the inspection by the City of Boston building inspector.

121.    The structural engineer, Fergal Brennock, and the designer of the structure, Ivan
        Hernandez, prepared written analyses summarizing and supporting their positions and
        concerns.

122.    On December 17, 2024, upon receipt and review of the structural engineer's report, the
        independent licensed construction supervisor sent his analysis, recommendations and
        initial estimates to remediate the faulty work with the goal of bringing the structure up to
        the requirements of the Massachusetts Building Code and up to the specifications clearly
        delineated in the approved building plans.

123.    On or about December 12, 2024, Lembo sent a follow-up email to the D&O Homes LLC
        email address clearly stating that all work must STOP, that BPG will ***not*** be signing a
        new contract, that Defendant Silva failed to perform as required by the Estimate, and that
        Defendants Silva and/or Omega Home Group LLC send a letter that they wished to leave
        the agreement and project.

124.    On December 23, 2024, Boston Dream Group Corporation, represented by Botelho Law
        Group, in Fall River, Massachusetts, converts its corporate structure to Boston Dream
        Group LLC.

125.    Lembo then provided, through the requested email address of
        ddhomescustomllc@gmail.com, information on additional construction defects that were
        discovered and documented after the December 12, 2024 walk through. The many defects
        included improper firewall installation, missing posts and hangers, , improper roofing
        asphalt to rubber transition, missing drains, misaligned walls, etc. . These defects would
        have been avoided if Defendants Bernardo and Silva had read, understood, and followed
        the detailed design plans and specifications , had understood the reasons behind the
        detailed design plans and specifications, had been familiar with the building materials
        and the manufacturer's installation instructions for firewalls. During and after the
        remedial work on the structural aspects the new general contractor came upon a number
        of new deficiencies that required remediation, such as: 1) foundation height of basement
        stairwell walls needed to be built up 6" or else the top of the wall would be below grade,
        2) the main foundation walls were not poured to the full height specified in the plan.
        (They are 10 – 12 inches too short), 3) stair height at the first floor and second floor
        landings were not aligned to flooring type, requiring a change in flooring spec at
        additional cost, 4) placement of Cultec stormwater management system is not per civil
        engineering plans, 5) parking area fill was too soft and needed to be removed and
        replaced, and 6) the sewer pipe exiting from the structure to the street was not properly
        pitched or supported.

126.    Defendants Bernardo and Silva were obviously not familiar with the reasons for and construction of rainwater runoff systems in a crowded, developed, urban neighborhood. The purpose of the Cultec system is to collect rainwater and ensure that rainwater does not cause ponding, flooding, or flow onto abutters' properties. Instead, Defendants Bernardo and Silva made fraudulent misrepresentations to Lembo concerning their construction experience and expertise in a crowded urban neighborhood environment.

127.    Lembo informed Defendant Bernardo, through the requested email address of ddhomescustomllc@gmail.com, but received no reply. On or about January 8, 2025, after still not receiving a reply to the earlier emails, Lembo sent certified letters to Defendants Bernardo and Silva at their business address of 135 Mill Street, Abington, MA. (USPS Tracking Numbers 9589071052701333172225 and 9589071052701333172218). USPS made two attempts at delivery, left notifications to pickup, and eventually returned the letters to Lembo on February 5, 2025.

128.    Eventually, on or about January 8, 2025, Defendant Bernardo, in a signed email from the D&O Homes LLC email account titled "BACK IN OFFICE", wrote that he will be looking into the matters.

129.    Later, an **_unsigned_** email from the D&O Homes LLC email account replied that they would be looking for evidence and that their plumber and structural engineer tried to access the property, but the property was secured. Lembo replied that no plumber or structural engineer had contacted him for access to inspect the structure.

130.    On or about January 14, 2025, Ivan Hernandez reviewed the firewall system as suggested by the structural engineer. He found incorrect installation of fire-resistant gypsum in that the specifications called for two (1) inch board at fire separation wall from the top of the cement wall dividing the units in the basement to the roof with a 3/4 inch air gap between wood framing on each side. Instead, he found, a mix of 5/8 inch DensGlass Sheathing and 1 inch DensGlass ShaftLiner used inconsistently throughout the installation, several areas with a single layer of board between the units, several gaps where fire could easily

pass through, loose sheets not fitted tightly in the metal channels which can create flame spread, incorrect fire resistant material used at the front, rear wall and roof (the wall sheathing and roof sheathing at the fire separation wall was not fire rated or protected from fire, joint at fire wall with breakaway clips to allow separation collapse in case of fire, the manufacturer's instructions for the installed product require sealant in the metal channels at certain locations but sealant was not applied or incorrectly applied. Mr. Hernandez found that the firewall was improperly constructed and did not follow the approved plans. The documentation was forwarded to Defendants Bernardo and Silva.

131. The Area Separation Wall assembly using Georgia-Pacific Gypsum DensGlass® Shaftliner is designed for use in multi-family, multi-story townhouses as a firewall. Because it is constructed using gypsum board, the assembly is easy to erect, secure and provides economical fire protection and sound control. DensGlass Shaftliner conforms to the requirements of the International Residential Code and International Building Code for use in Area Separation Wall assemblies. The Area Separation Wall is constructed once the framing for **one** townhouse unit is complete and ***prior*** to the construction of the adjacent unit. The assembly is constructed at the foundation and continues either to the underside of the roof sheathing or through the roof into the parapet. The assembly is linked to the adjacent framing with aluminum breakaway clips that allow for collapse of the fire-exposed unit without collapse of the solid Area Separation Wall. Georgia-Pacific Gypsum, the manufacturer of DensGlass® Shaftliner, provides detailed instructions for the installation of firewalls using this product. (Exhibit 2).

132. Lembo then sent an email requesting financial accountings, descriptions of work performed to date, delivery of any product that was paid for but uninstalled such as windows and screens, some of which still have not been provided, though paid for.

133.    In an email dated January 24, 2025, Defendant Bernardo stated, among other things,

> "Hi, sorry for my late response. i [sic] had to fire the person that was most in charge for all the stuff from 29 and others. I just got back as well. I had heart myocarditis on the 13th. Got [sic] back on the 21th. Anyway, 1- I talked to Ivan [Hernandes, the designer of the structure] on Tuesday. jan.21. 19 min recorded conversation . . . 2- engineering/ architect site visit. ‣ I was able to get hold of him two days ago. " kept calling him, but he was out of state " - HE WAS ON VACATION, HE WILL BE BACK ON JAN-27TH. HE SAIDTHAT HE'LL TRY TO STOP BY SAME DAY, I WILL KEEP YOU POSTED. " MONDAY OR TUESDAY " 27 OR 28. I will be there with him to walk-though everything. After the inspection he'll let me know his timeline to deliver all the reports for frame inspection.

134.    Defendant Bernardo's representation that he "had to fire the person that was most in charge for all the stuff from 29" is clearly fraudulent. The person "most in charge" according to the Estimate signed on August 4, 2023 and on the building permit was Defendant Silva. In addition, Defendant Bernardo's admission that he is recording telephone conversations is very troubling.

135.    On or about January 27, 2025, Defendant Bernardo, who had been illegally assuming the role of construction supervisor, inspected the structure with his own expert structural engineer, Mr. Carlos Ferreira, the principal of MP Design Consultants, 118 Turnpike Road, Suite 200, Southborough, MA 01772. Mr. Ferreira's website states, "the leader of the structural engineering department brings a wealth of expertise, particularly in the realm of structural engineering and cost analysis. His vast experience and leadership in cost-effective structural engineering practices can significantly enhance the value our team offers to clients". Defendant Bernardo and Mr. Ferreira had unfettered access to the structure and took multiple photographs documenting the construction defects.

136.    On January 27, after Defendant Bernardo had inspected the structure with Mr. Ferreira, Lembo met on site with Defendant Bernardo and Mr. Ferreira. Lembo asked Defendant Bernardo if he agreed with and saw the defects and flaws outlined in the emails and reports. He answered affirmatively in the presence of Lembo, Glynn and Mr. Thomas

Lembo. During this meeting, Mr. Ferreira concurred that all the defects were real and needed to be corrected. Mr. Ferreria agreed with Brennock's analysis and pointed out issues with overdriven exterior wall sheathing nails which could compromise HERS compliance and sheathing performance.

137.    BPG then explicitly reiterated, as had been expressed earlier, that BPG, due to the poor quality of workmanship among other things - the construction defects were ***not*** esoteric or cosmetic, the construction defects were so blaringly obvious and dangerous that they could only have been created by a totally incompetent builder – did not want Defendant Boston Dream Group Corporation and/or Defendant Omega Home Group LLC and/or Defendant D&O Homes LLC and/or Defendant Silva and/or Defendant Bernardo and/or any associates managing or performing further work ***and*** that they were expected to fund the warranty and remediation work on the structure. At this time Lembo was unaware that Boston Dream Group Corp had been converted to Boston Dream Group LLC.

138.    Lembo reiterated that the remedial work would be considered warranty work and, as the issues were serious, affecting the integrity of the structure and the life and property-saving firewall between the units, there was no confidence that the Defendants could complete the remediation properly. As such, the Defendants were expected to provide financial relief through invoice credits and/or cash refunds to get the structure to meet the design plans, to meet the requirements of the Massachusetts Building Code, and to pass City of Boston inspection.

139.    BPG then receives, via email, an undated, ***single page*** invoice without any supporting documentation.

140.    Material defects were still being discovered as construction commenced such as an incorrectly installed main sewer pipe from house to street, a roof leak in flat roof section that had been already repaired by the Defendants' roofer, but the repair was substandard as it had inappropriate transition from asphalt to rubber (flat) roofing. While the method used did resolve the leaks, the method was not considered industry best practice as it is

prone to premature failure. The staircases between floors were improperly constructed resulting in a non-code compliant step height at the top and bottom step of the staircase. To fix this defect, the stairs would have to be pulled out and rebuilt of the floor type would have to be changed to very expensive hardwood to accommodate the discrepancy. The foundation wall had been poured approximately 10 –1 2 inches too short which caused the rear basement stairwell wall to be six inches below grade. The fill used for the parking area at rear of house was found to be inappropriate to support the driveway and a significant amount of fill needed to be removed and the area rebuilt with proper material.

141.    All of the above defects were the result of the Defendants' failure to read, understand, and follow the very detailed construction plans and specifications that had been provided to them.

142.    On January 24, 2025, BPG replies to the undated D&O Homes LLC invoice with its own financial analysis but receives no reply.

143.    On or about February 25, 2025, D&O Homes LLC retains the law firm of Kenney & Sams, who represents Boston Dream Group Corp in the 79 Bonham Road litigation, to demand $183,007.34 based on the single page "Invoice". Kenney & Sams further claimed that D&O Homes LLC has a "right to repair". Kenney & Sams dismisses BPG's accounting as "grossly exaggerated" and threatens to secure payment "by all available legal means". Kenney & Sams seems to be unaware that BPG has no contract with D&O Homes LLC and that D&O Homes LLC came into existence *after* the Estimate was signed on August 4, 20023. Most egregious, Kenney & Sams provided no support for its demand and *still* has not provided any support for its demand despite several formal requests by BPG's counsel.

144.    On March 3, 2025, Lembo, unrepresented by counsel, responded to Kenney & Sams with detailed financial information.

145.   On April 2, 2025, Kenney & Sams responds with further threats of litigation. BPG then
       retained counsel and a Complaint is filed with the American Arbitration Association
       pursuant to the provision in the Estimate signed on August 4, 2023:

> Contract Arbitration
>
> Contract disputes shall be resolved/escalated through the process
> defined in Mass General Laws, chapter 142A. If unresolved
> through that process, parties agree to non-biding [sic] arbitration
> through the American Arbitration Association. Failing that they may
> agree to binding arbitration through the American Arbitration
> Association or remedy in Massachusetts court system.

146.   On May 7, 2025, in a conference call with the American Arbitration Association,
       Defendant Silva, despite the representation in the "Estimate", dated August 4, 2023, that
       "Omega Home Group LLC ('The contractor' 'The company') agrees to be solely
       responsible for the completion of the work described", claimed that his participation in
       the 29 Orange Street project was limited to digging the hole and pouring the concrete
       foundation. BPG's counsel asked in a letter to Kenney & Sams who ordered the lumber
       and other materials and who supervised the framing construction after the foundation was
       completed, but Kenney & Sams has provided no response.

147.   Defendant Bernardo may have assumed the role of construction supervisor, but even
       though he was issued construction supervisor license No. CS-119960 on June 20, 2024,
       he failed to follow the City of Boston's process for substitution of construction
       supervisors. Also, there was a significant length of time between Defendant Silva's
       alleged walk away and June 20, 2024 when it appears there was ***no*** licensed construction
       supervisor associated with the construction. In any case, Defendant Bernardo did not
       substitute himself as successor construction supervisor on the building permit.

148.   On May 22, 2025, Omega's counsel sent the following demand to BPG's counsel:

> This letter shall serve as a formal demand that your client, BGP on
> Orange, LLC ("BGP"), immediately cease and desist from
> performing any further repair, alteration and/or modification work
> to the property located at 94 Colwell Drive, Dedham, MA (the

"Property"), which is subject to the ongoing dispute and pending arbitration.

Continued work on the Property threatens to materially alter or destroy relevant evidence necessary for an accurate inspection and evaluation of the current condition of the Property by Omega. If BGP disregards this demand and proceeds with further work on the Property, we will have no choice but to seek relief from the AAA which will include a motion for spoliation sanctions seeking the dismissal of BGP's arbitration demand as well as the costs included in connection with filing the motion.

149.    The May 22, 2025 demand letter incorrectly identifies the Property address as 94 Colwell Drive, Dedham, MA which is Lembo's home address.

150.    The May 22, 2025 demand letter is another example of the racketeering tactics Defendants Bernardo and Silva employed against BPG. Well before this demand letter was sent, the Defendants had their expert evaluate the construction defects. Now, almost six months after Defendants Bernardo and Silva were informed about the construction defects, counsel for Omega Home Group LLC refuses to acknowledge that the defects existed and that the defects have been repaired at BPG's expense.

## CAUSES OF ACTION

### FIRST AND SECOND CAUSES OF ACTION
Against Defendants Bernardo and Silva, the "RICO Defendants"
Violation of RICO, 18 U.S.C. 1962(c)

151.    Plaintiff realleges and incorporates all the allegations of Paragraphs 1 through 150 above, as if fully set forth again herein.

152.    Defendants Bernardo and Silva engaged in racketeering, activities - fraudulent and dishonest business dealings – specifically, unlawful predicate acts explicitly listed in the RICO statute; there was a pattern of racketeering activities; and a formal or informal association-in-fact enterprise existed to carry out the racketeering activities.

153.    Defendants Bernardo and Silva, are persons within the meaning of 18 U.S.C. § 1961(3) and natural persons and legally distinct entities from the corporations themselves, were corporate employees, managers, and/or officers of corporations, unlawfully conducted the

affairs of corporations, irrespective of whether they conducted those affairs within the scope of their authority, in a RICO-forbidden way.

154.    The predicate acts were:

    a.   Mail Fraud (18 U.S.C. § 1341): Using the postal service to commit fraud, such as sending misleading advertisements.

    b.   Wire Fraud (18 U.S.C. § 1343): Engaging in fraudulent schemes via electronic communication, including phone or internet.

    c.   Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises (18 U.S.C. § 1952): Traveling across state lines to further a fraudulent enterprise; Traveling in, or use of the facilities of, interstate or foreign commerce in order to distribute the proceeds of fraudulent activities; traveling in, or use of the facilities of, interstate or foreign commerce in order to promote certain fraudulent activities

    d.   Money Laundering (18 U.S.C. §§ 1956(a)(2)(A)) Transporting or Attempting to Transport Funds to Promote Unlawful Activity.

155.    The association-in-fact enterprise consisted of Raquel Fernandes Faria, Boston Dream Group LLC, Boston Dream Group Corporation, Omega Home Group LLC, and D&O Homes LLC

156.    The Defendants combined together as an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in and affecting interstate commerce, to achieve common goals they could not achieve lawfully, and could not achieve without each other's collusion and cooperation. This enterprise had a purpose, including but not limited to, obtaining contracts for construction projects they were not licensed for through various types of fraud proscribe by RICO, overbilling for time and materials associated with home building, diversion of money, rightfully belonging to homeowners, from the legitimate purpose of constructing homes, and hiding their liability through the organization and re-organization of corporations.

157.    Defendants Bernardo and Silva participated in related and continuous conduct that combined to produce a pattern of racketeering over a time exceeding one year. Such conduct included knowingly making false, misleading, and/or omissive statements, in connection with the 29 Orange Street project, which concealed and/or misrepresented their experience and qualifications in constructing residential homes, knowingly making false, misleading, and/or omissive statements in connection with the 29 Orange Street project on multiple occasions, and/or preparing or directing the preparation of false documents with the knowledge that they would be submitted, by using the mail and/or wires to transmit such statements and documents as part of a scheme to defraud BPG and/or by organizing a secret corporation in Wyoming which Defendants Bernardo and Silva necessarily knew and recognized that it would be necessary for them to travel to Wyoming and/or to use the mails and wires in order to consummate their fraudulent business schemes.

## RICO CAUSATION

158.    BPG has been injured in its business or property by reason of Defendant Bernardo's and Defendant Silva's violations of RICO. The violations of RICO were not only "but for" causes of BPG's injuries, but the proximate causes as well. The injuries to BPG's business or property are directly related to the injurious conduct of Defendants Bernardo and Silva.

159.    The compensable injury flowing from the RICO violations of Defendant Bernardo and Defendant Silva is the harm caused by the predicate acts and therefore the RICO violations led directly to BPG's injuries.

160.    The link between the RICO predicate acts and BPG's injuries are not "too remote", "purely contingent", or "indirect" and is sufficient to show proximate cause. There are no better situated plaintiffs who would have an incentive to sue. Proximate cause also exists because There are (1) no "concerns about proof" because the injury is so direct that BPG's damages attributable to the RICO violations, as distinct from other,

independent, factors, are readily ascertainable; (2) there are no concerns about administrability and the avoidance of multiple recoveries; and (3) the societal interest in deterring illegal conduct and whether that interest would be served in a particular case because directly injured victims can generally be counted on to vindicate the law without any of the problems attendant upon suits by plaintiffs injured more remotely. The causal links between the conduct of Defendants Bernardo and Silva and BPG's damages is not contingent on any other third party or circumstance.

161.   As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), BPG has been injured in its business and property.

162.   As a result, BPG has suffered actual damages in an amount to be determined at trial, but believed to be over $300,000. Moreover, BPG is entitled to recover treble the actual damages sustained, plus the costs of its suit, including reasonable attorneys' fees, in accordance with 18 U.S.C. § 1964(c).

## THIRD, FOURTH, FIFTH, SIXTH, SEVENTH AND EIGHTH CAUSES OF ACTION
Against All Defendants
Violation of M.G.L. c. 93A, § 11

163.   Plaintiff realleges and incorporates all the allegations of paragraphs 1 through 162 above, as if fully set forth again herein.

164.   BPG was at all relevant times a domestic limited liability corporation engaged in the conduct of trade or commerce.

165.   The Defendants were at all relevant times persons engaged in the conduct of a trade or commerce.

166.   The Defendants' acts as described above constituted unfair methods of competition and/or unfair and/or deceptive acts and practices in violation of M.G.L. c. 93A.

167.   The Defendants' violations of the statute caused BPG loss of money and/or property, as set forth in detail above.

168.    Acts or practices that fail to comply with existing statutes, rules, regulations, or law meant for the protection of the public's health, safety, and welfare are prohibited by 940 C.M.R. § 3.16(3). Based on Mr. Silva's representation that he walked away after the foundation was poured and the fact that construction continued under the supervision of Defendant Bernardo who was not licensed, a violation of Massachusetts law occurred.

169.    As a result, BPG suffered actual damages in an amount to be determined at trial but believed to be over $300,000. Moreover, BPG is entitled to recover treble the actual damages sustained, plus costs of suit, including reasonable attorneys' fees, in accordance with the statute.

**NINETH, TENTH, ELEVENTH, TWELFTH, THIRTEEN, AND FOURTEENTH CAUSES OF ACTION**
Against All Defendants
Intentional Misrepresentation and Fraud

170.    Plaintiff realleges and incorporates all the allegations of paragraphs 1 through 169 above, as if fully set forth again herein.

171.    The Defendants made oral and written false statements to BPG, including misleading half-truths. The false statements included statements that were clear and direct and statements that were indirect and reasonably suggested that the statement was true without the Defendants saying so. For example, Defendants intentionally and fraudulently misrepresented that they held licenses to build new construction, two family homes in Boston, were familiar with the Massachusetts Building Code for new construction of two family homes, were familiar with the City of Boston's rules and regulations concerning building permits, etc., were able to follow, read, and/or understand detailed architectural drawings and plans, had previously constructed residences from the ground up, that D&O Homes LLC was an "accounting thing", prepared reports concerning the finances of the 29 Orange Street project, and would have regular meetings with BPG to discuss finances and construction issues.

172. The Defendants knowingly concealed or omitted material information in violation of a duty to disclose it. For example, Defendant Bernardo knowingly concealed that he was not licensed by the Commonwealth of Massachusetts to build homes in Massachusetts.

173. The Defendants misrepresented existing facts concerning their experience in building homes from the ground up. These misrepresentations were not opinions, but were facts that could be determined with certainty whether it is true or false.

174. The Defendants made statements that were half-truths by communicating about a matter and not honestly disclosing all the important facts about that matter that were within their knowledge. A half-truth occurs when someone only gives partial information and fails to mention that they knew other important facts. For example, the Defendants made half truths concerning the role of D&O Homes LLC and that Defendant Silva would be the construction supervisor for the 29 Orange Street project.

175. The false statements concerned facts that were important to BPG's decision to engage and/or contract with the Defendants to build the structure at 29 Orange Street. Licensing, experience, and references were reasonably important and material to BPG. The Defendants' false statements were a main reason for BPG's decision to do business with the Defendants.

176. When the Defendants made these false statements, the Defendants knew that the statements were false and/or recklessly asserted that the statements were true when the statements were false. The Defendants was reckless because by exercising even a little diligence, the Defendants would have had easy access to accurate facts and failed to check out those facts. For example, the Defendants recklessly ignored the City of Boston rules and regulations concerning the permitting process and the process for blocking roads and sidewalks to accommodate construction activities.

177. The Defendants intended for BPG to rely on the false statements in making its decision to engage and/or contract with the Defendants to build the structure at 29 Orange Street.

178.    BPG reasonably relied on the Defendants' false statements and this reliance caused BPG to act in such a way as to do business with the Defendants.

179.    BPG's reliance on the Defendants' false statements caused BPG to suffer financial loss.

WHEREFORE, BPG seeks judgment for damages against the Defendants as provided for under federal and Massachusetts law; and such other and further relief as may be just.

## <u>JURY DEMAND</u>

Plaintiff BPG hereby demands a trial by Jury.

Respectfully submitted, BPG on Orange LLC, by its attorney,

Domenic Paolini, Esq
BBO # 643215
Paolini & Haley, PC
75 State Street
Suite 100 - #5478
Boston, MA 02109
Office: 617.951.0300
Direct: 617.372.1514
dpaolini@paoliniandhaley.com

Dated: July 28, 2025