**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **BPG ON ORANGE LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **25-12105-FDS** |
| | ) | |
| **DOUGLAS GERALDO AZEVEDO** | ) | |
| **BERNARDO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS ODELYTON SILVA
AND OMEGA HOME GROUP LLC'S MOTION TO DISMISS**

**SAYLOR, J.**

This action arises out of an allegedly botched construction project conducted by unqualified contractors. Plaintiff BPG on Orange LLC hired defendants Douglas Geraldo Azevedo Bernardo and Odelyton Nincao Silva to build a residential structure at 29 Orange Street in Boston. Bernardo and Silva operated through the defendant business entities—Boston Dream Group Corporation, Boston Dream Group LLC, Omega Home Group LLC, and D&O Homes LLC—during the course of the project. Plaintiff contends that defendants misrepresented their qualifications, leading to delays, additional expenses, and substandard construction. In addition, defendants allegedly submitted fraudulent invoices and operated through various business entities to avoid liability.

The amended complaint asserts civil claims against defendants Bernardo and Silva for racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c). It also asserts state-law claims for fraud and unfair and deceptive business practices against all defendants.

The amended complaint alleges federal-question jurisdiction pursuant to 28 U.S.C. § 1331 based upon the civil RICO claims and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

Defendants Odelyton Nincao Silva and Omega Home Group LLC have moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion to dismiss the civil RICO claims will be granted as to defendant Silva; the civil RICO claim will be dismissed as to defendant Bernardo; the Court will decline to exercise supplemental jurisdiction over the state-law claims; and this matter will be dismissed in its entirety without prejudice to its refiling in state court.

## I.    Background

### A.    Parties

BPG on Orange LLC is a limited liability company.  (Amend. Compl. ¶ 14, Dkt. No. 4). Its stated purpose is to develop and manage the property at 29 Orange Street in Boston.  (*Id.* ¶ 31).

Boston Dream Group Corporation is a Massachusetts corporation with a principal place of business in Massachusetts.  (*Id.* ¶ 17).  In May 2023, BPG contacted Boston Dream Group concerning the potential construction of a new residential building at 29 Orange Street.  (*Id.* ¶ 47).  At that time, Douglas Geraldo Azevedo Bernardo was the treasurer and Vice President of Boston Dream Group Corporation and served as the primary contact for BPG.  (*Id.* ¶¶ 17, 47).[1]

Omega Home Group LLC is a limited liability company.  (*Id.* ¶ 19).  It is solely managed by defendant Odelyton Nincao Silva.  (*Id.*).  Boston Dream Group Corporation brought in

---

[1] In January 2025, Boston Dream Group Corporation converted to a limited liability company and became Boston Dream Group LLC.  (Amend. Compl. ¶ 17).

Omega Home Group as a business partner on the 29 Orange Street project.  (*Id.* ¶¶52, 67).  In August 2023, BPG contracted directly with Omega Home Group to construct the building at 29 Orange Street.  (*Id.* ¶ 70).

D&O Homes LLC is a Wyoming limited liability company.  (*Id.* ¶ 20).  The complaint alleges that it was formed by Bernardo and Silva.  (*Id.* ¶ 75).  BPG paid D&O Homes for certain construction work done at 29 Orange Street.  (*Id.* ¶ 86).

### B.    Allegations of the Complaint

The complaint alleges the following facts.

In 2006, Linda Lembo and Patricia Glynn inherited an undeveloped parcel of land at 29 Orange Street in Boston.  (*Id.* ¶ 22).  Approximately fifteen years later they decided to develop the parcel.  (*Id.* ¶¶ 23-24).  In 2021, Linda Lembo and Patricia Glynn, along with their families, hired a designer to draw up construction plans for a two-family residential home and to begin the permitting and zoning process.  (*Id.* ¶ 24).

In February 2023, after securing zoning approval, Linda Lembo and Patricia Glynn formed BPG on Orange LLC to develop and manage the property.  (*Id.* ¶¶ 30-31).  BPG is managed by Michael Lembo and Michael Glynn, the husbands of Linda Lembo and Patricia Glynn.  (*Id.* ¶ 31).

On May 1, 2023, Michael Lembo noticed a vehicle advertising "Boston Dream Group" at a residence undergoing renovations at 79 Bonham Road in Dedham, Massachusetts.  (*Id.* ¶ 37).  Unknown to him at the time, Boston Dream Group did not have the required license for home construction or renovation in Massachusetts.  (*Id.* ¶¶ 38-42).  Rather, building permits for the 79 Bonham Road renovation were issued months later to Omega Home Group LLC through the license of Odelyton Nincao Silva.  (*Id.* ¶ 45).

On May 2, Michael Lembo emailed Boston Dream Group about BPG's plans for 29 Orange Street. (*Id.* ¶ 47). Douglas Bernardo responded that Boston Dream Group was interested in taking on the project. (*Id.*). His signature block in his email listed him as the founder of Boston Dream Group. (*Id.*).

Michael Lembo and Bernardo met in person on May 10, 2023. (*Id.* ¶ 48). At that meeting, Bernardo represented that he was an experienced, licensed builder and that Boston Dream Group routinely worked on homes in Boston. (*Id.*). The complaint alleges that at that time Bernardo held no Massachusetts licenses and Boston Dream Group had no experience building new homes in Boston. (*Id.*).

At some point in May, Bernardo brought Omega Home Group LLC into the project. (*Id.* ¶ 52). Silva, unlike Bernardo, had an active construction-supervisor license, which is required for new construction. (*Id.* ¶¶ 42, 45, 48). Silva, on behalf of Omega Home Group LLC, first contacted BPG with an initial estimate for the project on May 24, 2023. (*Id.* ¶ 55). Over the next several months, Silva and Michael Lembo exchanged a series of emails relating to the estimate. (*Id.* ¶¶ 55-56).

On June 28, 2023, BPG asked Silva and Bernardo for references. (*Id.* ¶ 57). They responded with a YouTube video and two websites. (*Id.*).[2] Bernardo and Silva represented that the YouTube video of a property at 143 Myrtle Street in Rockland, Massachusetts, and the website of a property at 7 Modoc Street in Duxbury, Massachusetts, were newly constructed homes they had built from the ground up. (*Id.*).

---

[2] The amended complaint does not specify whether Silva or Bernardo sent the YouTube and website links. (Amend. Compl. ¶ 57).

The complaint alleges that those representations were false.  The home at 143 Myrtle Street was originally constructed in 1800.  (*Id.* ¶ 58).  In February 2022, Silva had been issued a building permit to renovate the interior and exterior of the home, not for construction of a new home.  (*Id.* ¶ 62).  It further alleges that the property at 7 Modoc Street was built by a firm named Duxbury Construction.  (*Id.* ¶ 63).  Silva's only involvement in the construction of that property was as a painter.  (*Id.* ¶ 64).

On August 4, 2023, BPG electronically signed the final estimate by Omega Home Group for the 29 Orange Street project.  (*Id.* ¶ 70; Estimate, Dkt. No. 4-1).  It made an initial payment to Omega Home Group later that month.  (*Id.* ¶ 74).

On August 24, 2023, Bernardo and Silva formed D&O Homes LLC as a Wyoming limited liability company.  (*Id.* ¶ 75).  They then instructed Michael Lembo to make all further payments to D&O Homes LLC and to send the checks to Silva's address in Abington, Massachusetts.  (*Id.* ¶ 80).  When Michael Lembo inquired why he should send the checks to an entity not listed on the contract, they represented it was an "accounting thing."  (*Id.*).  BPG made several payments to D&O Homes totaling $139,505 over the following month.  (*Id.* ¶ 86).

In early September, Silva went to the Boston Inspectional Services Department ("ISD") to apply for the 29 Orange Street building permit, paid the permit fee, and emailed a copy of the receipt to Michael Lembo.  (*Id.* ¶ 77).  Silva told Lembo that the ISD clerk said he was "good to go," and, based on that statement, he believed the permit was approved and that they could begin work.  (*Id.* ¶ 78).  Silva did not understand that paying the permit fee only began a final approval process for the building permit and no permit had been issued.  (*Id.*).

Sometime in September 2023, Silva began supervising the excavation of the foundation.  (*Id.* ¶ 85).  On October 2, 2023, Silva called ISD to arrange for an inspection prior to pouring

concrete. (*Id.*). During the call, ISD informed him that no permit had been issued and all work was to cease immediately. (*Id.*). The penalty for working without a valid permit was invalidation of the permit application and zoning approval. (*Id.* ¶ 88).

BPG then had to redo the permit and zoning process. (*Id.* ¶¶ 89-93). A building permit was finally issued for the 29 Orange Street project on July 15, 2024. (*Id.* ¶ 93). Later that week, Silva obtained a physical copy of the building permit. (*Id.* ¶ 107).

In the meantime, Bernardo had received his own construction-supervisor license. (*Id.* ¶ 112). On July 31, 2024, Bernardo informed Michael Lembo that Silva no longer wanted to be involved in the project. (*Id.* ¶ 113). Silva later claimed that his role for the 29 Orange Street project was limited to digging and pouring the foundation. (*Id.* ¶ 163). Regardless of the scope of his responsibilities, it appears that Silva had no involvement with the project following July 2024. (*Id.* ¶¶ 107, 169, 194).

Also in July 2024, Boston Dream Group Corporation filed a lawsuit against the owner of 79 Bonham Road for withholding payment. (*Id.* ¶ 96). The lawsuit arose after the owner indicated that she would not pay for the construction without a satisfactory accounting of the project's costs. (*Id.*).

In September 2024, Boston Dream Group Corporation sent Michael Lembo a revised estimate for the 29 Orange Street project with increased prices and without certain terms and conditions. (*Id.* ¶ 117). That estimate named Bernardo as the construction supervisor. (*Id.*). Although Lembo refused to sign the new estimate, construction continued. (*Id.* ¶ 118, 121). The footing, foundation, framing, roofing, and exterior wall sheathing were installed between August 12, 2024, and December 1, 2024. (*Id.* ¶¶ 121-23).

The relationship between BPG and Bernardo deteriorated over that time period. (*Id.* ¶¶ 124-132). Michael Lembo repeatedly requested, but was not provided, certain financial reporting. (*Id.* ¶¶ 124, 131). Bernardo threatened to stop work on the project until a new agreement was signed. (*Id.* ¶ 127). BPG eventually decided to end the relationship. (*Id.* ¶ 133). On December 12, 2024, Michael Lembo ordered that all work must stop and requested a final invoice with supporting documentation. (*Id.* ¶¶ 133, 137).

Around the same time, multiple inspections found defects in the construction that required remedial work. (*Id.* ¶¶ 134-36, 140, 145). Bernardo hired his own inspector who confirmed the construction defects. (*Id.* ¶¶ 150-51). Michael Lembo then stated that he expected defendants to provide financial relief to fund the remedial work. (*Id.* ¶ 153).

Subsequently, BPG received an undated invoice for $183,077.34 from D&O Homes without any supporting documentation. (*Id.* ¶ 154; Invoice, Dkt. No. 4-1). BPG replied to the invoice with its own financial analysis. (*Id.* ¶ 157). It did not receive a reply. (*Id.*).

In the following months, D&O Homes and BPG retained lawyers and threatened litigation. (*Id.* ¶¶ 158, 162). BPG then filed an arbitration complaint pursuant to an arbitration clause in the August 4, 2023 estimate with Omega Home Group. (*Id.* ¶ 162). On May 22, 2025, counsel for Omega Home Group sent a letter to BPG demanding that any construction at 29 Orange Street cease as it would destroy material evidence. (*Id.* ¶ 170).

### C.  **Procedural Background**

BPG brought this action in federal court on July 28, 2025. (Dkt. No. 1). It filed an amended complaint on August 20, 2025. (Dkt. No. 4). The amended complaint asserts civil RICO claims against defendants Bernardo and Silva pursuant to 18 U.S.C. § 1964(c), as well as state-law claims against all defendants for fraud and unfair and deceptive business practices in violation of Mass. Gen. Laws. ch. 93A.

Defendants Odelyton Silva and Omega Home Group LLC ("the Silva defendants") filed a motion to compel arbitration on November 20, 2025. (Dkt. No. 8). The following month, they withdrew that motion and moved for an extension of time to file a responsive pleading. (Dkt. Nos. 13, 14). On January 13, 2026, while those motions remained pending, they moved to dismiss all claims against them. (Dkt. No. 18).

On January 21, 2026, plaintiff moved to strike the motion to dismiss for being untimely. (Dkt. No. 23). It also moved for default judgment pursuant to Fed. R. Civ. P. 55 against the Silva defendants for failure to timely serve an answer or otherwise respond to the complaint and for a default judgment against D&O Homes LLC for failure to file any responsive pleading or motion. (Dkt. Nos. 22, 24).

The next day, the Court denied the motion for default judgment against the Silva defendants in light of the short delay in its filing of its motion to dismiss and the absence of any demonstrated prejudice. (Dkt. No. 25). It denied the motion for default judgment against D&O Homes LLC without prejudice as there had not yet been a motion for or entry of default. (*Id.*).

On February 16, 2026, BPG moved for an enlargement of time and alternative service to serve the complaint on defendant Bernardo, as he allegedly was evading service. (Dkt. No. 26). Defendants Bernardo, Boston Dream Home Group Corporation, Boston Dream Group LLC, and D&O Homes LLC opposed that motion. (Dkt. No. 38).

On February 25, 2026, the Silva defendants filed a motion for entry of default against BPG for its failure to timely respond to the motion to dismiss. (Dkt. No. 30). The next day, BPG responded by moving for an extension of time to May 1, 2026, to file an opposition. (Dkt. No. 31).

At the same time, BPG moved to file a second amended complaint. (Dkt. No. 35). It sought to add certain admissions made by Silva in a February 2026 email to Lembo. (Dkt. No. 36). In that email, Silva apologized to Lembo for not following through on the 29 Orange Street project and permitting Bernardo to operate under his permit and license when he stepped away. (Dkt. No. 36-1).

BPG has not filed an opposition to the motion to dismiss.

## II.   Standard of Review

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

9

### III.    Discussion

#### A.    Civil RICO Claims (Counts 1-2)

##### 1.    General Principles

The amended complaint asserts civil RICO claims pursuant to 18 U.S.C. § 1964(c) against defendants Bernardo and Silva. "To state a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.'" *Humana Inc. v. Biogen, Inc.*, 126 F.4th 94, 103 (1st Cir. 2025) (quoting *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003)). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) to include a variety of predicate offenses.

The civil-suit provision of the RICO statute grants the "extraordinary remedy" of treble damages and attorney's fees. *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000) (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989)); *see* 18 U.S.C. § 1964(c). Civil RICO claims "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Efron*, 223 F.3d at 20. "[I]n cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly . . . ." *Id.* Accordingly, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

##### 2.    The RICO Allegations

In essence, the amended complaint alleges that the defendant business entities and Raquel Fernandes Faria (Bernardo's spouse) formed an enterprise for the purpose of fraudulently

obtaining construction contracts, overbilling clients, diverting money, and avoiding liability. (Amend. Compl. ¶ 180).  It contends that the conduct of Bernardo and Silva through that enterprise constitutes a pattern of racketeering.  (*Id.* ¶ 181).  Specifically, it alleges that the predicate acts were mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; money laundering, 18. U.S.C. § 1956(a)(2)(A); and travel in the aid of a racketeering enterprise, 18 U.S.C. § 1952.  (*Id.* ¶ 176).  The amended complaint alleges that misrepresentations made by Silva and Bernardo about their experience and qualifications and their submissions of false invoices constitute mail and wire fraud.  In addition, it appears to allege that establishing and receiving payment through D&O Homes constitutes money laundering and travel in the aid of a racketeering enterprise.

The Silva defendants have moved to dismiss the civil RICO claim for failing to plead plausible allegations of (1) an enterprise; (2) the predicate fraudulent acts; (3) the predicate act of money laundering; and (4) a pattern of racketeering activity.  Because the alleged conduct falls well short of a pattern of racketeering, the Court will not reach the other grounds.

### 3.    Pattern of Racketeering Activity

A "pattern of racketeering activity" requires, at a minimum, two related predicate acts committed within ten years of one another.  *See* 18 U.S.C. § 1961(5); *see also Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, 94 F.3d 721, 731 (1st Cir. 1991).  Such predicate acts must be related to one another and pose a threat of continued criminal activity.  *Id*.

Here, defendants contend that the complaint fails to plead the required degree of "continuity."  The "continuity" requirement may be satisfied through either a "closed-ended" or "open-ended" approach.  *See Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir. 2005) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989)).

11

"Under the closed-ended approach, [p]laintiff must allege predicate acts 'extending over a substantial period of time that amount to a threat of continued criminal activity.'" *Atlantic Acquisitions, LLC v. J.H. Reid Gen. Contractor*, 909 F. Supp. 2d 32, 35 (D. Mass. 2012) (quoting *Giuliano*, 399 F.3d at 387). Although "weeks or months" will not suffice, predicate acts extending "over several years may compel a conclusion of closed-ended continuity." *Giuliano*, 399 F.3d at 387. In addition to duration, courts consider the extensiveness of the RICO scheme. *See Efron*, 223 F.3d at 18 (collecting cases); *see also id.* (finding "highly relevant" that "defendant [was] involved in only one scheme with a singular objective and a closed group of target victims").

Under the open-ended continuity approach, there is no need for temporal continuity as long as the "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future." *H.J.*, 492 U.S. at 242. Open-ended continuity can also be found if the predicate acts "are part of an ongoing entity's regular way of doing business." *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 531 (1st Cir. 2015) (quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 45 (1st Cir.1991)). To find open-ended continuity, the court may look to see if the endeavor in question would have gone on indefinitely had it not been detected. *Efron*, 223 F.3d at 20. Courts have found no open-ended continuity where the predicate acts amounted to a single scheme or targeted only a few victims. *See Giuliano*, 399 F.3d at 391 (holding that because all racketeering activity was focused on the singular objective of wresting control of the racetrack, no open-ended continuity was established); *see also Home Orthopedics Corp.*, 781 F.3d at 531 (finding no open-ended continuity when there were no allegations that racketeering activity would continue at the end of the scheme targeted at a single victim).

The complaint here fails to establish the requisite continuity under either approach.  All of the alleged predicate acts relate to defrauding BPG in connection with the 29 Orange Street project.  (Amend. Compl. ¶ 180).  There was a single scheme targeting a single victim.  The racketeering activity occurred, at most, over the course of 24 months between May 2023 and May 2025.  Given the targeted nature of the scheme, that period of time does not support a finding of closed-ended continuity.  *See Efron*, 223 F.3d at 19 (explaining that the "finite nature" of the alleged racketeering activities spanning a "relatively modest period of time" of 21 months could not support a finding of closed continuity).  Moreover, the racketeering activity related to a single construction project.  The scheme would come to a natural conclusion with the end of the project; there is no indication that it would continue indefinitely such that it would satisfy the requirements of open-ended continuity.  *See Giuliano*, 399 F.3d at 391 (finding no open-ended continuity because "[o]nce achieved, the illegal scheme, as alleged, would end").[3]

In short, any wrongdoing related to the 29 Orange Street project is not "the kind of broad or ongoing criminal behavior at which the RICO statute was aimed."  *Efron*, 223 F.3d at 18.  A "'business deal gone sour . . . alone does not equate to a RICO violation."  *Home Orthopedics Corp.*, 781 F.3d at 531 (quoting *Gonzalez-Morales v. Hernandez-Arencibia,* 221 F.3d 45, 52 (1st Cir. 2000)).

It is true that the amended complaint does describe further wrongdoing in relation to the 79 Bonham Road project.  If that wrongdoing constituted racketeering activity, then conceivably it could plausibly suggest that Silva and Bernardo engaged in racketeering as a regular way of

---

[3] The amended complaint also alleges that the Silva defendants disassociated themselves from the 29 Orange Street project and the remaining defendants by July 2024.  It is difficult, therefore, to see how the alleged predicate acts here could be attributable to an "ongoing" entity such that there is a threat of continued criminal activity.

doing business.  However, the alleged offenses as to the 79 Bonham Road project are not RICO predicate acts.

The amended complaint alleges that Boston Dream Group Corporation operated without proper permitting and submitted insufficiently detailed invoices for the 79 Bonham Road project. While that conduct may involve civil offenses under state law, it does not resemble any of the enumerated state or federal crimes under 18 U.S.C. § 1961(a).  The fact that Silva and Bernardo may be in the business of building without proper licenses or providing insufficient invoices does not rise to the level of a RICO violation.  Similarly, Boston Dream Group's alleged advertising in violation of Massachusetts state law is not a predicate act under § 1961.  Because the alleged wrongdoing related to the 79 Bonham Road project and advertising violation are not racketeering activity within the meaning of the statute, they do not amount to a pattern of racketeering activity.

In sum, the civil RICO claims are without merit.  Accordingly, the Court will grant the motion to dismiss as to the civil RICO claims against defendant Silva.

### 4.    RICO Claim against Bernardo

Although Bernardo has not yet been served in this case, dismissal of the civil RICO claim against him is likewise appropriate.  *Sua sponte* dismissals for failure to state a claim are appropriate "in limited circumstances" where "the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond."  *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 7 (1st Cir. 2007) (quoting *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002).  Even without prior notice, dismissal may be warranted where "it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile."  *Id.* (quoting *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001)).

Here, plaintiff had an opportunity to respond to the motion to dismiss the civil RICO claims and did not do so.  Instead, it sought to amend the complaint to add admissions made by Silva relating to the 29 Orange Street project.  Those factual allegations do not address the defects in its civil RICO claims.  Permitting plaintiff to continue to pursue the civil RICO claims against Bernardo would merely prolong their inevitable dismissal.  Moreover, as the civil RICO claims serve as the only basis for the court's jurisdiction over this matter, it would further entangle the court in a matter that is properly reserved for the state court to resolve.  *See Irving v. United States*, 162 F.3d 154, 160 (1st Cir. 1998) (en banc) (explaining that federal courts "have an affirmative obligation to examine jurisdictional concerns on their own initiative").  Under the circumstances, the Court will also dismiss the civil RICO claims against Bernardo.

### B.      State-Law Claims (Counts 3-14)

When a complaint does not state a viable claim under federal law, and jurisdiction over the remaining claims is based solely on supplemental jurisdiction, a "district court has discretion to decline to exercise supplemental jurisdiction."  *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010); 28 U.S.C. § 1367(c).  In so doing, the court "must take into account considerations of judicial economy, convenience, fairness to the litigants, and comity."  *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012); *see also Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) ("[I]t can be an abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts.").

Here, the remaining claims against all defendants are Massachusetts state-law claims.  Apart from the complaint, motion to dismiss, and various procedural motions, no substantial litigation has occurred.  For that reason, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims.

## IV.    Conclusion

For the foregoing reasons, the Silva defendants' motion to dismiss is GRANTED; the civil RICO claim against defendant Bernardo is DISMISSED; all other pending motions are DENIED as moot; the Court declines to exercise supplemental jurisdiction over the state-law claims; and this case is DISMISSED without prejudice to its refiling in state court.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  July 10, 2026                         United States District Judge

16